## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

RECEIVED

2020 SEP 15  A 10: 10

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**CHRISTOPHER HAMPTON and CORTNEY ROLLEY, on behalf of themselves individually, and all others similarly-situated,**

  **PLAINTIFFS,**

**v.**

**ULYSSES OLIVER, JR.,
BRYANNA NICOLE MOSLEY,
LEON TROY WILLIAMS,
WILLIE M. BURKS,
JOHN DOE 1,
JOHN DOE 2,
JOSEPH H. HEADLEY and
ALABAMA DEPARTMENT OF
CORRECTIONS**

  **DEFENDANTS.**

**CASE NO.:** 2:20-cv-00742-MHT-SRW

## CLASS ACTION
## COMPLAINT

COME NOW Plaintiffs, Christopher Hampton and Cortney Rolley, file their

Complaint, pursuant to 42 U.S.C. § 1983, against Defendants, Ulysses Oliver, Jr.,

Bryanna Nicole Mosley, Leon Troy Williams, Willie M. Burks, John Doe 1 & 2,

Joseph Headley and the Alabama Department of Corrections and, in support thereof,

state as follows:

**PARTIES**

1.      Plaintiff Christopher Hampton is above the age of nineteen (19) years and is a resident of Barbour County, Alabama.

2.      Plaintiff Cortney Rolley is above the age of nineteen (19) years and is a resident of St. Clair County, Alabama.

3.      Defendant Joseph Headley is above the age of nineteen (19) years and is a resident of Chilton County, Alabama. At the time of the events, as laid out *infra*, Defendant Headley was a Warden with the Alabama Department of Corrections serving as the Warden at Elmore Correctional Facility. Defendant Headley is sued exclusively in his official capacity for the sole purpose of implementation of the injunctive relief requested *infra*.

4.      Defendant Willie M. Burks is above the age of nineteen (19) years and is a resident of Montgomery County, Alabama. At the time of the events, as laid out *infra*, Defendant Burks was a Lieutenant with the Alabama Department of Corrections serving as a Correctional Officer at Elmore Correctional Facility with supervisory responsibility for Ulysses Oliver, Jr., Bryanna Nicole Mosley, Leon Troy Williams, John Doe 1 & 2. Defendant Burks is sued both in his official and individual capacities.

5.      Defendant Ulysses Oliver, Jr. is above the age of nineteen (19) years and is a resident of Montgomery County, Alabama. At the time of the events, as laid

out *infra*, Defendant Oliver was a Sergeant with the Alabama Department of Corrections serving as a Correctional Officer at Elmore Correctional Facility. Defendant Oliver is sued both in his official and individual capacities.

6.    Defendant Bryanna Nicole Mosley is above the age of nineteen (19) years and is a resident of Shelby County, Alabama. At the time of the events, as laid out *infra*, Defendant Moseley was employed by the Alabama Department of Corrections and was serving as a Correctional Officer at Elmore Correctional Facility. Defendant Mosely is sued both in her official and individual capacities.

7.    Defendant Leon Troy Williams is above the age of nineteen (19) years and is a resident of Montgomery County, Alabama. At the time of the events, as laid out *infra*, Defendant Williams was employed by the Alabama Department of Corrections and was serving as a Correctional Officer at Elmore Correctional Facility. Defendant Williams is sued both in his official and individual capacities.

8.    Defendants John Doe 1 & 2 are, upon information and belief, above the age of nineteen (19) years and residents of the State of Alabama. At the time of the events, as laid out *infra*, Defendants John Doe 1 & 2 were employed by the Alabama Department of Corrections serving as Correctional Officers at Elmore Correctional Facility and were responsible, through either action or inaction, for the physical harm caused to either Christopher Hampton or Cortney Rolley, on or about February 16, 2019. John Doe 1 & 2 are sued both in their official and individual capacities.

9.      Defendant, the Alabama Department of Corrections was and is, at all times relevant hereto, a governmental agency that owns and operates the Elmore Correctional Facility and is responsible for funding and maintaining the facility, and ensuring that the physical facilities provide for adequate security, procedures and/or protocols to protect inmates from abuse by the correctional officers. The Alabama Department of Corrections is an entity subject to suit under federal law and the laws of Alabama. At all relevant times, the Alabama Department of Corrections was aware of the lack of adequate security, procedures and/or appropriate protocols to ensure the safety of inmates and exhibited deliberate indifference to those conditions.

10.     Defendants have acted under color of state law, custom, and usage at all times relevant to this action.

## JURISDICTION AND VENUE

11.     Paragraphs 1 through 10 are incorporated herein as if set out in full.

12.     This Court has personal jurisdiction over all Defendants.

13.     This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered as a result of deprivation under color of state law rights secured by the Fourteenth Amendment to the United States Constitution. Hence, the Court has Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(3). Furthermore, jurisdiction over Plaintiffs' claims for

injunctive relief, costs, expenses, and attorney fees is additionally conferred by 42 U.S.C. § 1988.

14.     This action also claims violations of Alabama State law. Pursuant to 28 U.S.C. § 1367(a), this Court has Ancillary or Supplemental Jurisdiction over Plaintiff's state law claims since these claims are so related to the claims in the § 1983 civil rights action that they form part of the same case and controversy and arise out of the same set of operative facts.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and other applicable law because the cause of action arose in Elmore County, Alabama, which is situated within the district and divisional boundaries of the Middle District of Alabama.

## FACTS

### Parties' Respective Penal Backgrounds

16.     Paragraphs 1 through 15 are incorporated herein as if set out in full.

17.     According to its public statement, the mission of the Alabama Department of Corrections is to "confine, manage and provide rehabilitative programs for convicted felons in a safe, secure and humane environment, utilizing professionals who are committed to public safety and to the positive re-entry of offenders into society."

18.    Elmore Correctional Facility ("Elmore") is located north of Montgomery in Elmore, Alabama in the above-named county in this Judicial Circuit.

19.    Defendant Joseph Headley was, at the times relevant to the facts laid out *infra*, Elmore's Warden and functioned as its chief operations officers with control over its policies and with supervisory responsibility for the corrections officers working at the facility.

20.    Defendants Ulysses Oliver, Jr., Leon Troy Williams, Bryanna Nicole Mosley, Willie M. Burks and John Doe 1 & 2 work or worked as Correctional Officers with the State of Alabama (the "Defendant Correctional Officers.")

21.    Defendant Burks was a Lieutenant at Elmore and supervised Ulysses Oliver, Jr., Bryanna Nicole Mosley, Leon Troy Williams and John Doe 1 & 2.

22.    Plaintiffs Christopher Hampton and Cortney Rolley are former inmates at Elmore.

23.    Plaintiffs Hampton and Rolley are currently incarcerated at facilities operated by Defendant, the Alabama Department of Corrections.

24.    The events made the basis for this suit occurred while both Plaintiffs were serving time at Elmore at the same time that Defendant Correctional Officers and Defendant Headley worked at Elmore with supervisory responsibility over both Plaintiffs.

25.     At all times relevant to this lawsuit, Defendant Correctional Officers were acting within the line and scope of their employment by the Alabama Department of Corrections and were supervised by Defendant Headley, the Warden of Elmore at the time.

### Christopher Hampton and Cortney Rolley
### Are Taken by the Defendant Correctional Officers to the Shift Office

26.     On or around February 16, 2019, Plaintiffs had just finished visitation and were walking back to their cells. Defendant Williams apprehended and handcuffed Plaintiff Rolley and accused him of attempting to retrieve contraband from beyond the prison fence line. Plaintiff Hampton was then handcuffed as well by Defendant Burks.

27.     Plaintiffs were searched. No contraband was found on their person.

28.     Defendant Williams escorted Plaintiffs to the guards' ECF shift office. Plaintiffs were still handcuffed with their hands behind their back.

29.     Upon arrival at the shift office, Defendant Williams stated to Defendants Mosley, Oliver, Burks, Paesley and Watson that "*[I] caught these motherfuckers trying to get some dope into the jail.*"

30.     Plaintiffs were then placed in the ECF observation room while Defendants Williams, Mosley and Oliver went to the front gate area in order to review surveillance footage of the alleged offense.

31.    The ECF observation room contains four (4) beds and sits directly across from the ECF shift office, separated by a hallway, approximately five (5) feet across.

32.    The shift office door and the observation room door open into the hallway. Additionally, the ECF shift office has a window through which persons inside the shift office can see into the hallway.

33.    Upon Defendants William, Mosley and Oliver's return, Defendant Oliver retrieved the key and let himself into the observation room where Plaintiffs Hampton and Rolley were sitting quietly, still with their hands cuffed behind their backs.

34.    Neither Plaintiff was engaged in any kind of disruptive conduct.

35.    Defendant Oliver then commanded Plaintiffs *"Let's go."* Defendant Burks dragged Plaintiff Rolley out of the observation room and into the hallway, in full view of the remaining Defendant Correctional Officers.

36.    As he left the observation room, Defendant Burks turned to Plaintiff Hampton and said *"You're next."*

37.    There was no legitimate law enforcement reason to remove either Plaintiff from the observation room at that time.

**The Brutal Beating of Cortney Rolley**
**By the Defendant Correctional Officers**

38.    As the remaining Defendant Correctional Officers watched through the doorway and window of the shift office, and under the supervision of Defendant Burks, Defendant Oliver proceeded to shove Plaintiff Rolley against the hallway wall, knocking him to the ground.

39.    While Plaintiff Rolley lay prostrate at his feet, Defendant Oliver began to systematically punch and kick him more than a dozen times. Defendant Oliver then pulled out a collapsible baton, snapped it open, and continued to beat Plaintiff Rolley with it, until Plaintiff Rolley lost consciousness.

40.    Defendant Oliver struck Plaintiff Rolley approximately nineteen (19) times.

41.    Throughout this beating, Plaintiff Rolley's hands were cuffed behind his back.

42.    Throughout this beating, all other named Defendant Correctional Officers were present and witnessed the assault on Plaintiff Rolley. At no point did any Defendant Correctional Officer make any effort to intercede on Plaintiff Rolley's behalf or prevent Defendant Oliver from administering the beating, despite having the duty, opportunity and ability to do so.

### The Brutal Beating of Christopher Hampton
### By the Defendant Correctional Officers

43.     After assaulting Plaintiff Rolley, and as he lay unconscious in the hallway, Defendant Oliver re-entered the observation room and dragged Plaintiff Hampton out into the hallway.

44.     In order to do this, he had to move past Defendant Williams, who was standing in the doorway to the observation room.

45.     Defendant Williams made no attempt to stop Defendant Oliver.

46.     Defendant Oliver dragged Plaintiff Hampton back to where Plaintiff Rolley was lying, unconscious, in the hallway. Plaintiff Rolley had defecated on himself.

47.     Under the supervision of Defendant Burks, and in sight of the remaining Defendant Correctional Officers, Defendant Oliver began to beat Plaintiff Hampton in the same manner in which he had beaten Plaintiff Rolley, using his fists and feet, but primarily with his baton.

48.     Defendant Oliver beat Plaintiff Hampton in the legs, back of the head, the side of the face and the arms.

49.     At one point Plaintiff Hampton screamed in pain, yelling "*You broke my wrist!*" Defendant Oliver simply replied "*I don't give a fuck*", and continued to beat him.

50.     The beating continued for about three (3) to four (4) minutes as the remaining Defendant Correctional Officers watched.

51.     Throughout this beating, Plaintiff Hampton's hands were cuffed behind his back.

52.     Throughout this beating, all other named Defendant Correctional Officers were present and witnessed the assault on Plaintiff Hampton. At no point did any Defendant Correctional Officer make any effort to intercede on Plaintiff Hampton's behalf or prevent Defendant Oliver from administering the beating, despite having the duty, opportunity and ability to do so.

53.     Defendant Burks, as he watched the beatings, stated "*It's fair.*" He did nothing to stop the assaults.

54.     No contraband was ever found.

### Plaintiffs' Injuries and Subsequent Treatment

55.     Following the beatings by the Defendant Correctional Officers, both Plaintiffs were returned to the observation room where they remained for about an hour.

56.     Once Plaintiff Rolley had regained consciousness, Defendant Burks demanded that the Plaintiffs sign an affidavit, admitting to the contraband offense.

57.     Plaintiffs refused.

58.     Defendant Burk then told them "*If you don't sign it, then we're really going to fuck you up.*"

59.     Plaintiffs, in grave fear for their safety, signed the affidavit.

60.     Defendant Burks then threatened the Plaintiffs not to say anything to anybody about what had happened to them.

61.     Plaintiffs were then transported to the infirmary at Staton Correctional Facility ("Staton") for treatment as Elmore lacked an infirmary.

62.     Both Plaintiffs were clearly seriously injured and the nurse at Staton inquired as to what had happened.

63.     Plaintiff Hampton told the nurse that he had simply fallen off his bed. The nurse responded that the injuries could not result from such a fall. She told him "*I can help you.*"

64.     Plaintiff Hampton, in fear, responded "*No. You don't have to go back down there.*"

65.     Plaintiff Hampton had a broken wrist, multiple contusions and abrasions, and required stitches for the injury to the side of his face and eye.

66.     Plaintiff Rolley sustained trauma to his head, back, right arm, right elbow and right leg and suffered a concussion as a result of being beaten unconscious.

67.     Plaintiff Rolley also sustained a ruptured blood vessel in his left eye, numerous contusions and a lacerated scalp.

68.     Plaintiff Rolley, also still in fear for his safety, also said nothing about the cause of his injuries. Due to the severity of his injuries he was transported to Jackson Memorial Hospital for treatment, approximately three (3) to four (4) hours following the assault.

**The Criminal Prosecutions by the U.S. Department of Justice**

69.     In or around 2019, several of the Defendant Correctional Officers were criminally charged with a violation of Title 18, United States Code, Section 242.

70.     Specifically, the Defendant Correctional Officers were charged with a deprivation of Plaintiffs' Constitutional rights to be free from cruel and unusual punishment by one acting under the color of law.

71.     Defendant Burks was also criminally charged with a violation of Title 18 United States Code, Section1623. Specifically, that he knowingly made false material declarations in grand jury testimony about his intentional and deliberate overtightening of handcuffs and restraints in order to inflict pain on inmates under his supervision.

72.     The majority of the Defendant Correctional Officers so charged have pled guilty to these offenses.

73.     Defendant Burks was previously set to stand trial in October, 2020, but this date has been continued due to the COVID-19 pandemic.

74.     Defendant Oliver received a custodial sentence for his part in the brutal beating of Plaintiffs and is currently incarcerated.

### Class Allegations

75.     This case is brought as a class action under RULE 23(b)(1) and (b)(2) of the FEDERAL RULES OF CIVIL PROCEDURE.

76.     The failure of effective and well-crafted policies prohibiting the corporal punishment of restrained inmates at Elmore Correctional Facility has allowed, and will continue to allow, unfettered physical assault on and abuse of such inmates by correctional officers.

77.     The putative Class is defined as follows:

All inmates at the Elmore Correctional Facility who have been or will in the future be at risk of being assaulted or abused by correctional officers while handcuffed, shackled or restrained in any fashion.

78.     This is a prospective punitive Class seeking, solely, an injunction regarding certain practices which Plaintiff deems dangerous and in need of proscription.

79.     The claims of the Named Plaintiffs are typical of the claims of the Class inasmuch as the Named Plaintiffs are former inmates at Elmore Correctional Facility who suffered serious physical assault at the hands of the correctional officers while

handcuffed.  Both the Named Plaintiffs and the putative Class were/are/will be subject to a common scheme and course of conduct by the authorities at Elmore Correctional Facility.

80.    The Named Plaintiffs have no interests adverse to the interests of other Class members.

81.    The Named Plaintiffs will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in prosecution of class actions and complex litigation.

82.    This action is also appropriate as a class action pursuant to RULE 23 (b)(1) and/or (2) as the Named Plaintiffs seek injunctive relief for the entire Class. Hence, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant, Joseph Headley and his required adherence to applicable law. Further, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

83.    There are numerous and substantial questions of law and fact common to all putative Class members which control this litigation, and which predominate over any individual issues. Included within the common questions are:

a. Whether there is a policy at Elmore preventing correctional officers from striking inmates while handcuffed;

b. Whether Plaintiffs and the Class were or will be injured or placed in the zone of danger by the lack of such a policy;

c. If there is a policy at Elmore preventing correctional officers from striking inmates while handcuffed, whether it was communicated to the correctional officers;

d. Whether Plaintiffs and the Class were or will be injured or placed in the zone of danger by the lack of communication of such a policy to the correctional officers;

e. If there is a policy at Elmore preventing correctional officers from striking inmates while handcuffed and if it was communicated to the correctional officers, whether it was enforced by the Warden;

f. Whether Plaintiffs and the Class were or will be injured or placed in the zone of danger by the lack of enforcement of such a policy; and

g. Whether an injunction by this Court would have the effect of making inmates  safer while at Elmore.

84.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, the Named Plaintiffs might not be able to obtain an Injunction to remedy this type of situation in the future.

85.    Most individual putative Class members have little ability to prosecute an individual action, due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and, frankly, the fear of pursuing litigation against Defendants who have authority over them.

86.     This action will result in an orderly and expeditious administration of

Class claims. Economies of time, effort, and expense will be fostered, and uniformity

of decisions will be insured.

87.     This action presents no difficulty that would impede its management by

the Court as a class action and a class action is superior to other available methods

for the fair and efficient adjudication of the claims brought herein.

### CAUSES OF ACTION

### Count I

### Violation of Fifth, Eighth and Fourteenth Amendments
### to the United States Constitution and 42 U.S.C. § 1983
### (Defendant Correctional Officers and the Alabama Dept. of Corrections)

88.     Paragraphs 1 through 87 are incorporated by reference herein as if set

out in full.

89.     The Defendant Correctional Officers violated Plaintiffs' Constitutional

rights by using excessive force under the color of law in violation of the Eighth

Amendment.

90.     The Defendant Correctional Officers deprived Plaintiffs' of their rights,

privileges, and immunities secured by the Fifth and Eighth Amendments to the

Constitution as incorporated and applied to the states through the Fourteenth

Amendment.

91.     The Defendant Correctional Officers violated numerous state laws, statutes, contracts and administrative regulations in committing the assault and battery upon Plaintiffs.

92.     The acts as set forth above were intentional, wanton, malicious and oppressive thus entitling Plaintiffs to an award of punitive damages.

93.     The Defendant Correctional Officers' violations of Plaintiffs' Constitutional rights resulted in Plaintiffs' injuries and suffering.

94.     Acting under color of state authority and pursuant to a potential for illegal conduct to which Defendant Oliver was deliberately indifferent, the Defendant Correctional Officers' conduct caused Plaintiffs' suffering and were a direct cause of Plaintiffs' injuries. All such conduct violated clearly established and well-settled law.

95.     The Defendant Correctional Officers allowed, via action and inaction, Defendant Oliver to violate Plaintiffs' Constitutional rights resulting in Plaintiffs' suffering and were a direct cause of Plaintiffs' injuries.

96.     The Defendant Correctional Officers deprived Plaintiffs of those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth Amendment.

97.     Further, these Defendants violated Plaintiffs' Fifth, Eighth, and Fourteenth Amendment rights not to be subjected to cruel and unusual punishment during detention and the right not to be subjected to conditions which constitute punishment without an adequate hearing.

98.     Further, through the acts as defined more fully above, Defendants violated Plaintiffs' Equal Protection rights under the Fifth and Fourteenth Amendments.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants, Ulysses Oliver, Jr., Bryanna Nicole Mosley, Leon Troy Williams, Willie M. Burks, John Doe 1 & 2 and the Alabama Department of Corrections, for compensatory and punitive damages, interest, costs of this action (including a reasonable attorney fee), and such other legal and equitable relief as this Court deems necessary and proper.

## Count II

### Injunctive Relief
### (Defendant Headley and the Alabama Dept. of Corrections)

99.     Paragraphs 1 through 87 are incorporated by reference herein as if set out in full.

100.    Defendant Headley, as warden of the Elmore Correctional Facility, had a duty to implement policies that would ensure the health and safety of the inmates under his care and supervision.

101. Defendant, the Alabama Department of Corrections, as the owner, operator and supposed guarantor of inmates' constitutional rights at the Elmore Correctional Facility, had a duty to implement policies that would ensure the health and safety of the inmates housed therein.

102. Defendants Headley and the Alabama Department of Corrections further had a duty to implement policies that would protect the inmates under their care and supervision from abuse, neglect or other harm at the hands of the correctional officers they employed.

103. Defendants Headley and the Alabama Department of Corrections breached these duties by failing to implement and/or enforce such policies.

104. As a direct and proximate result of the breaches of duty alleged herein, both Plaintiffs suffered serious and painful physical injuries and emotional distress.

105. This violation of Plaintiffs' Constitutional rights and the imminent danger to other similarly situated prisoners forced to interact with guards at Elmore Correctional Facility makes injunction a proper remedy under 42 U.S.C. § 1983 and Alabama state law.

WHEREFORE, Plaintiffs pray, on behalf of themselves and all others similarly situated, that this Court enter an Order in the form of a prospective, proscriptive injunction as to Defendants Headley and the Alabama Department of Corrections, that policies be written or enforced to the effect that:

a. an inmate cannot be struck with a baton, punched or kicked, while handcuffed or restrained in any fashion;

b. in the event of allegations by an inmate of such an occurrence, prompt and appropriate investigation of all abuse-related complaints; and

c. in the event such allegations are proven true after prompt and appropriate investigation, that such policies/rules require and result in formal disciplinary action be taken against any correctional employee, or agent, found to have engaged in such prohibited conduct.

Plaintiffs pray for this remedy together with an award of costs of this action (including a reasonable attorney fee), and such other legal and equitable relief as this Court deems necessary and proper.

### Count III

**Conspiracy to Conceal Violation of Fifth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 (Defendant Correctional Officers)**

106. Paragraphs 1 through 87 are incorporated by reference herein as if set out in full.

107. The Defendant Correctional Officers violated Plaintiffs' Fifth, Eighth, and Fourteenth Amendment rights not to be subjected to cruel and unusual

punishment during detention and the right not to be subjected to conditions which constitute punishment without an adequate hearing.

108. Specifically, Defendant Burks forced Plaintiffs to sign an affidavit admitting guilt and exonerating the Defendant Correctional Officers of culpability.

109. The contents of said affidavit were untrue and Plaintiffs' signatures were obtained under duress.

110. In furtherance of the conspiracy to conceal the beating of Plaintiffs and deprive them of certain Constitutional protections, Defendant Burk knowingly made false material declarations in grand jury testimony about his intentional and deliberate overtightening of handcuffs and restraints in order to inflict pain on inmates under his supervision.

111. In so doing, the Defendant Correctional Officers reached an understanding or agreement to conceal their violation and deprivation of Plaintiffs' rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth Amendment, through the use of force or intimidation.

112. Defendant Correctional Officers' conspiracy to cover up their violations of Plaintiff's Constitutional rights deprived Plaintiffs of those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the

Constitution as incorporated and applied to the states through the Fourteenth Amendment.

113. Further, through the acts as defined more fully above, Defendants violated Plaintiffs' equal protection rights under the Fifth and Fourteenth Amendments.

WHEREFORE, Plaintiff pray that judgment be entered against Defendants, Ulysses Oliver, Jr., Bryanna Nicole Mosley, Leon Troy Williams, Willie M. Burks, and John Doe 1 & 2, for compensatory and punitive damages, interest, costs of this action (including a reasonable attorney fee), and such other legal and equitable relief as this Court deems necessary and proper.

### Count IV

### Battery
### (Defendant Oliver)

114. Paragraphs 1 through 87 are incorporated by reference herein as if set out in full.

115. While Plaintiffs were incarcerated at Elmore Correctional Facility, Defendant, Oliver, while acting within the line and scope of his employment, wrongfully wrought harmful and offensive contact on Plaintiffs' respective persons.

116. As a direct and proximate result of Defendant Oliver's conduct, Plaintiffs were caused to suffer serious personal injury and severe emotional distress.

WHEREFORE, Plaintiff pray that judgment be entered against Defendant Ulysses Oliver for compensatory and punitive damages, interest, costs of this action, and such other legal and equitable relief as this Court deems necessary and proper.

### Count V

### Assault
### (Defendant Correctional Officers)

117.   Paragraphs 1 through 87 are incorporated by reference herein as if set out in full

118.   While Plaintiffs were incarcerated at Elmore Correctional Facility, the Defendant Correctional Officers while acting within the line and scope of their employment, wrongfully committed an intentional touching, and/or threat of the same, on Plaintiffs' respective persons, in a rude, threatening or explicit manner, under such circumstances that said touching created in Plaintiffs a well-founded fear of an imminent battery.

119.   As a direct and proximate result of the Defendant Correctional Officers' conduct, Plaintiffs were caused to suffer personal injury and severe emotional distress.

WHEREFORE, Plaintiff pray that judgment be entered against Defendants Ulysses Oliver, Jr., Bryanna Nicole Mosley, Leon Troy Williams, Willie M. Burks, and John Doe 1 & 2, for compensatory and punitive damages, interest, costs of this

action, and such other legal and equitable relief as this Court deems necessary and proper.

## Count VI

### Tort of Outrage (a.k.a. Intentional Infliction of Emotional Distress) (Defendant Correctional Officers)

120.   Paragraphs 1 through 87 are incorporated by reference herein as if fully set forth.

121.   While incarcerated at Elmore Correctional Facility, Plaintiffs were subjected to conduct so outrageous in character and so extreme in degree as to transcend all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

122.   The actions referred to herein were intentional on the part of Defendant, Ulysses Oliver, acting within the line and scope of his employment, so as to cause Plaintiffs to suffer severe emotional distress, or with reckless disregard as to the effect of such conduct.

123.   As a direct and proximate result of such extreme and outrageous conduct by Defendant, Ulysses Oliver, and the breach of Defendants Williams, Mosley, Burks & John Doe 1 & 2's duty to prevent the infliction of such outrageous conduct on the inmates under their care, Plaintiffs were caused to suffer personal injury and severe emotional distress.

WHEREFORE, Plaintiff pray that judgment be entered against Defendants Ulysses Oliver, Jr., Bryanna Nicole Mosley, Leon Troy Williams, and John Doe 1 & 2, for compensatory and punitive damages, interest, costs of this action, and such other legal and equitable relief as this Court deems necessary and proper.

### Count VII

### Negligence
### (Defendant Correctional Officers)

124.   Paragraphs 1 through 87 are incorporated by reference herein as if set out in full

125.   The Defendant Correctional Officers owed a duty to Plaintiffs to allow them to serve their custodial sentence without fear of injury at the hands of their jailors or other correctional employees.

126.   Defendant Oliver breached this duty when he acted with negligence, carelessness and/or lack of skill when interacting with Plaintiffs as laid out *supra*.

127.   Defendants Mosley, Williams, Burks & John Doe 1 & 2 likewise breached their respective duty to Plaintiffs when they acted with negligence, carelessness and/or lack of skill by failing to prevent Defendant Oliver from assaulting both Plaintiffs, despite having the opportunity and ability to do so.

128.   As a direct and proximate result of the breaches of duty alleged herein, both Plaintiffs suffered serious and painful physical injuries and emotional distress.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants, Ulysses Oliver, Jr., Bryanna Nicole Mosley, Leon Troy Williams, Willie M. Burks, and John Doe 1 & 2, for compensatory damages, interest, costs of this action, and such other legal and equitable relief as this Court deems necessary and proper.

Submitted this, the 9th day of September, 2020.

Eric J. Artrip (ASB-9673-I68E)
Teri Mastando (ASB-4507-E54T)
*Attorneys for Plaintiffs,*
MASTANDO & ARTRIP, LLC
301 Washington St., Suite 302
Huntsville, Alabama 35801
Telephone: (256) 532-2222
Facsimile: (256) 513-7489
artrip@mastandoartrip.com
teri@mastandoartrip.com

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL:**

Ulysses Oliver, Jr.
6304 Burbank Crossing Loop,
Montgomery, AL 36117.

Leon Troy Williams
488 Stone Park Blvd,
Pike Road, AL 36064.

Bryanna Nicole Mosley
310 Ivy Hills Circle,
Calera, AL 35040

Willie M. Burks
2770 Sumter Ave.,
Montgomery, AL 36109

Joseph H. Headley,
4471 County Road 76,
Clanton, AL 35045

Alabama Department of Corrections
301 South Ripley Street
P.O. Box 301501,
Montgomery, AL 36130-1501

Eric J. Artrip
*Attorney for Plaintiffs*